IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:20-CR-601-M |
| SAMSON ASRES (1) | |

## FACTUAL RESUME

In support of Samson Asres's plea of guilty to the offense in Count One of the indictment, Samson Asres, the defendant, Labi Akere, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the indictment, charging a violation of 18 U.S.C. § 1028(f) (18 U.S.C. § 1028(a)(1) and (b)(1)), that is, Conspiracy to Commit Identity Theft Crimes, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.*  That the defendant agreed with one or more persons to commit the offense of Identity Theft, a violation of 18 U.S.C. § 1028(a)(1), as charged in the indictment;

*Second.*  That the defendant knew of the unlawful purpose of the agreement and;

*Third.*  That the defendant joined in it willfully, with the intent to further its

---

[1] *See generally* Fifth Circuit Pattern Jury Instruction 2.76C (5th Cir. 2019), *United States v. Sanders,* 952 F.3d 263, 273 (5th Cir. 2020) (discussing the elements of a conspiracy that does not require overt acts); *see also Whitfield v. U.S.,* 543 U.S. 209, 215-16 (2009) (overt acts need only be pled where the criminal code requires it, not at common law).

Factual Resume—Page 1

unlawful purpose.

The elements of Production of a False Document, a violation of 18 U.S.C. § 1028(a)(1), are as follows:[2]

*First.*     That the defendant knowingly produced an identification document, an authentication feature, or a false identification document;

*Second.*     That the defendant did so without lawful authority; and

*Third.*     That the identification document, authentication feature, or false identification document was in or affected interstate or foreign commerce, including the transfer of a document by electronic means.

To prove the offense alleged in Count Eight of the indictment, charging a violation of 18 U.S.C. § 1028A(a)(1), that is, Aggravated Identity Theft, the government must prove each of the following elements beyond a reasonable doubt:[3]

*First.*     That the defendant knowingly transferred, possessed, or used a means of identification of another person;

*Second.*     That the defendant did so without lawful authority;

*Third.*     That the defendant transferred, possessed, or used the means of identification of another person during and in relation to a violation of 18 U.S.C. § 1028(a)(1), Production of a False Document; and

*Fourth.*     That the defendant knew that the means of identification of another person belonged to a real person, living or dead.

The term "identification document" means a document made or issued by or under the authority of the United States Government, a State, a political subdivision of a State, a sponsoring entity of an event designated as a special event of national significance, a

---

[2] Fifth Circuit Pattern Jury Instruction 2.48A.

[3] Fifth Circuit Pattern Jury Instruction 2.48C.

foreign government, a political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals.

The term "false identification document" means a document of a type intended or commonly accepted for the purposes of identification of individuals that is not issued by or under the authority of a governmental entity and appears to be issued by or under the authority of a State.

The term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, or employer or taxpayer identification number

## STIPULATED FACTS

1.  Samson Asres admits and agrees that starting in or around November 2018 and continuing through February 2020, in the Dallas Division of the Northern District of Texas and elsewhere, he knowingly and willfully combined, conspired, confederated, and agreed with Brandon Bay, Stephen Robert Adams, Todd Stuart Breitling, Christopher William Feil, William Ernest Hartshorn, Breanna Wellborn, Jeffrey Wilcox, Jose Yllana, and others to knowingly and without lawful authority produce identification documents, authentication features, or false identification documents, to wit: driver licenses, the production of which was in or affected interstate foreign commerce, in violation of 18 U.S.C. § 1028(f) (18 U.S.C. § 1028(a)(1) and (b)(1)).

2.  ~~Samson~~ Asres further admits and agrees ~~that he~~ knowingly and without ~~lawful authority~~ possessed, transferred, and used the means of identification of another   L.A

~~real individual, J.W., during and in relation to a violation of 18 U.S.C. § 1028(a)(1), in violation of 18 U.S.C. § 1028A.~~ *LA* *MD*

3. Samson Asres admits and agrees that, relevant to the offense described below, he facilitated the purchase of merchandise on credit using the personal information of hundreds of unknowing victims. To further the scheme, Asres purchased or commissioned the purchase of credit reports from credit bureaus and other entities, including but not limited to BeenVerified, Experian, Credit Sesame, Public Data.com, Credit Karma, and Transunion. These credit reports were ordered and exchanged via electronic means, in and affecting interstate commerce. After reviewing the reports, Asres admits that he would select the individuals with the highest credit scores to victimize, knowing that it would be easier to purchase items using their credit line.

4. Asres would then locate a "runner" who would ultimately purchase merchandise. Either Asres or the "runner" would send a photograph of that "runner" to Brandon Bay. Asres admits that he knew Bay would use that photograph to create false and fraudulent Texas driver licenses without lawful authority. These fraudulent licenses bore the personal information of an unknowing victim, who had not authorized the use of their information, as well as a photograph of the "runner," who required the license for some unlawful means. Each license was created so that it would appear as though the holder of the license was in fact the individual whose information appeared on the card. These licenses were remarkably realistic and had many, if not all, of the appropriate watermarks and security features of a true Texas driver license. Asres admits that he would pay Bay a flat fee per fraudulent license for his services.

Factual Resume—Page 4

5. In order to further facilitate the scheme, Asres admits that he would commission or create fraudulent utility bills in the name of the unknowing victim that the runner could produce, if needed, to verify their identity and credit history.

6. Asres would then orchestrate the purchase of items with the "runner," providing them with the fraudulent Texas driver license and, when appropriate, fraudulent utility bill. Asres would drive the "runner" to a retail store, including Sprint, Verizon, AT&T, T-Mobile, Kohl's, Nebraska Furniture Mart, Neiman Marcus, Best Buy, Zales Jewelers, Home Depot, Ulta Beauty, and others, and purchase large ticket items – often cellular telephones – on credit. The "runner" would be given the personal information and the historical account and credit information of the victim in order to pass any credit screening required to open a credit account with the retailer. These "runners" included Stephen Robert Adams, Todd Stuart Breitling, Christopher William Feil, William Hartshorn, Breanna Wellborn, Jose Yllana, Jeffrey Willcox, and others known but not named herein. The scheme itself facilitated at least 161 separate offenses and caused a loss of $480,683.17.

7. As part of the scheme, Asres admits that he used and provided "runners" with a prepaid Vanilla Visa debit card ending in 7766. "Runners" would use the card if they needed to make a down payment or initial payment on any merchandise purchased largely on credit. This particular debit card was tied to over twenty fraudulent transactions associated with the scheme, and Asres admits that he personally used the card to make withdrawals at ATMs within the Northern District of Texas. This debit card was registered to victim J.W., a real individual, who did not authorize the use of his name

Factual Resume—Page 5


or date of birth to open and register the debit card. Asres admits that he knew J.W. was a real individual because part of the manner and means of the overall scheme was to use personal information belonging to real individuals with high credit scores who would be readily approved for credit.

8. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Counts One ~~and Eight~~ two of the indictment.

AGREED TO AND STIPULATED on this 29 day of November, 2022.

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

_____
SAMSON ASRES
Defendant

_____
NICOLE DANA
Assistant United States Attorney
Texas State Bar No. 24062268
KENNETH COFFIN
Assistant United States Attorney
Texas State Bar No. 24076986
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8694
Fax: (214) 659-8800
Email: nicole.dana@usdoj.gov

_____
LABI AKERE
Attorney for Defendant